815 F.2d 1106
 UNITED STATES of America ex rel. Edward WEISMILLER,
Petitioner-Appellant,
v.
Michael P. LANE, Director of the Illinois Department of
Corrections and the Illinois Attorney General,
Respondents-Appellees.
 No. 85-2280.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 10, 1986.
Decided March 30, 1987.
 
 Kenneth E. Balsters, Balsters & Morrison, Bethalto, Ill., for petitioner-appellant.
 Kenneth A. Fedinets, Office of Ill. Atty. Gen., Chicago, Ill., for respondents-appellees.
 Before WOOD and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 This is an appeal from the denial of habeas corpus relief under 28 U.S.C. Sec. 2254 (1982). As he did in the district court and the state courts, petitioner-appellant challenges the constitutionality of the Illinois "Guilty But Mentally Ill" (GBMI) statutes,[1] as well as the particular jury instructions given pursuant to those statutes at his trial. Because we find the challenge to the jury instructions to be barred by a state procedural default and we find the challenge to the statute to be without merit, we affirm.
 
 I.
 
 2
 Edward Weismiller was convicted in Illinois state court of the murder of his wife of 25 years, Nancy Weismiller. There is no dispute that he shot her with a .38 caliber revolver, and that she died from the gunshot wounds.
 
 
 3
 During the period prior to the shooting, Mr. Weismiller and his wife had been experiencing marital difficulties stemming from her sexually explicit correspondence with a prison inmate in Ohio, and from disagreements over how the couple's children should be raised. Their disagreements resulted in her moving out of their home on several occasions. At times the disagreements turned violent; on one occasion Nancy drove a car over Edward's legs. After this incident, we are informed in a classic bit of understatement, their relationship was "strained." Their problems led to a divorce proceeding that was pending at the time of the shooting. In fact, on the morning of the shooting, a divorce hearing was scheduled, but had to be cancelled due to the illness of the presiding judge. Although Weismiller had no recollection of it, his son testified that, upon seeing his wife and a friend that morning, Weismiller said that he would have shot both of them if he had a gun.
 
 
 4
 At his trial, Mr. Weismiller raised the affirmative defense of insanity. It was his contention that he developed an organic brain disorder when he received a blow to the head from a meat hook in an accident on the night of the killing. This disorder, he claimed, rendered him unable to conform his conduct to the requirements of law. Weismiller claimed to have no recollection of the events which occurred between the time he received the blow to the head and the time he found himself in police custody after the shooting. Shortly after he was injured, his son heard him talking to himself in the basement of their home, saying, "Ed Weismiller, are you ready for this? (Pause) yes, I am."
 
 
 5
 As required by Illinois law in cases where an insanity defense is raised, the trial court instructed the jury on the verdict of GBMI. According to the instructions given:
 
 
 6
 A special verdict of "guilty but mentally ill" may be returned instead of the verdicts of "guilty," "not guilty," and "not guilty by reason of insanity" but such a special verdict requires findings by you as follows:
 
 
 7
 First: That the defendant is guilty beyond a reasonable doubt of the offense of the murder of Nancy Weismiller; and
 
 
 8
 Second: That the defendant was not legally insane at the time of the commission of the murder of Nancy Weismiller; and
 
 
 9
 Third: That the defendant was mentally ill at the time of the murder of Nancy Weismiller.
 
 
 10
 Weismiller's counsel did not object to these instructions at his trial, nor did he object to the failure of the trial court to give more detailed instructions on the verdict of not guilty by reason of insanity. No instructions on those issues were tendered by Weismiller's counsel at trial. On direct review, the Illinois Appellate Court held that these failures to object resulted in a waiver of the asserted errors regarding the jury instructions, and that the errors were not "substantial defects" which, under Illinois law, may be reviewed notwithstanding the lack of a contemporaneous objection "if the interests of justice require." Alternatively, the Appellate Court held, even if the points were preserved, the instructions as a whole were not erroneous and did not deprive Weismiller of a fair trial because the jury had been instructed on the state's burden under Illinois law to prove sanity beyond a reasonable doubt as an element of the offense and had been adequately instructed on the difference between mental illness and insanity.[2] The Appellate Court rejected Weismiller's direct challenges to the Illinois GBMI statutes on the merits.
 
 
 11
 The district court found that Weismiller was barred from raising his challenges to the jury instructions by his state procedural default and that he had not established "cause" and "prejudice" to excuse that default as required by Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Then, the court rejected his direct challenges to the statute on the merits.
 
 II.
 
 12
 We agree with the district court that the petitioner's failure to object to the jury instructions in his state court trial precludes him from raising challenges to them in this collateral proceeding. A state procedural bar will not be lifted to allow federal habeas corpus review absent a showing of "cause" for the procedural default, and "prejudice" resulting therefrom. United States v. Frady, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982); Engle v. Isaac, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572-73, 71 L.Ed.2d 783 (1982); Sykes, 433 U.S. at 87, 97 S.Ct. at 2506; Cartee v. Nix, 803 F.2d 296, 300 (7th Cir.1986). Such a procedural bar plainly exists in this case, and petitioner has failed to make the requisite showing.
 
 
 13
 Petitioner claims that the "cause" for his failure to raise the issue of the allegedly defective jury instructions at his trial was "ineffective assistance of counsel." Petitioner's Br. at 26-27. However, the Supreme Court has recently made clear that mere attorney ignorance or inadvertence is insufficient cause to avoid a procedural default. Murray v. Carrier, --- U.S. ----, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). According to the Court, "So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, [466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ] ... we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." Id., 106 S.Ct. at 2645-46 (emphasis added); see also, Cartee, 803 F.2d at 300-01.
 
 
 14
 Petitioner has made no argument in this court that his counsel's performance was so deficient that it constituted an independent violation of the Sixth Amendment, in spite of the district court's specific holding that it was not. Accordingly any such contention is waived. Thus, there is no showing of "cause" within the meaning of Sykes.[3]
 
 
 15
 Additionally, we reject any suggestion that, because the Illinois Appellate Court addressed the merits in the alternative, the "cause" and "prejudice" standard should not apply. As we have noted repeatedly, where the state court has rejected claims later pressed on habeas corpus "on the 'twin grounds' of (1) lack of merit ... and (2) the petitioner's failure, without justification, to comply with a state procedural rule," the "cause" and "prejudice" standard applies. E.g. Goins v. Lane, 787 F.2d 248, 251 (7th Cir.1986); United States ex rel. Merneigh v. Greer, 772 F.2d 322, 325-28 (7th Cir.1985); Jentges v. Milwaukee County Circuit Court, 733 F.2d 1238, 1243 n. 1 (7th Cir.1984); Farmer v. Prast, 721 F.2d 602, 605-06 (7th Cir.1983). Any suggestion that the law is to the contrary is supported by absolutely no authority and, in light of the clear precedent in this circuit which governs the question, borders on the frivolous.
 
 III.
 
 16
 Weismiller's direct challenges to the Illinois GBMI statute are properly before us on the merits. The respondents make no contention that a state procedural default was committed with respect to these claims, and even if they did, the Appellate Court's opinion makes no mention of waiver, but addresses the challenges solely on the merits. Thus, even if a procedural default had occurred, we would still be required to address the claims on the merits. See Farmer, 721 F.2d at 605 n. 5.
 
 
 17
 The challenges which are properly before us are three-fold: (1) that the statute is unconstitutional because it "penalizes" the assertion of the insanity defense (which is claimed to be either a constitutional or statutory right); (2) that it violates equal protection by creating a classification which bears no rational relationship to any legitimate state interest; and (3) that it violates due process by encouraging jury confusion and compromise, thus depriving a defendant asserting the insanity defense of his right to have a jury fairly consider his defense. We note that this is apparently a case of first impression within the federal system (with one major exception noted below), although numerous state courts have considered and rejected similar challenges.[4] While we realize that those state cases, many of which are cited below, are not controlling on the question of the validity of the statute under the federal constitution, we nonetheless find them persuasive. Accordingly, we reject petitioner's constitutional challenges to the statute.
 
 A.
 
 18
 Weismiller first contends that the GBMI scheme violates the constitution by "penalizing" the unsuccessful assertion of the insanity defense. We disagree. The statute does not provide for any additional punishment for the defendant who asserts an insanity defense. Of course he may be found guilty if the jury is not persuaded of his insanity,[5] but this was true even before the statute was enacted. In a very real sense, the statute merely supplied a label for the defendant who, while he was clearly suffering from some mental deficiency at the time he committed the crime charged, was not legally insane. Thus, state courts in both Georgia and Illinois have upheld retroactive application of those states' GBMI statutes against ex post facto challenge. Kirkland v. State, 166 Ga.App. 478, 304 S.E.2d 561, 565 (1983); People v. Marshall, 114 Ill.App.3d 217, 70 Ill.Dec. 91, 102, 448 N.E.2d 969, 980 (4th Dist.1983).
 
 
 19
 Although the terms defining "mental illness" in the GBMI statute and "mental disease or defect" in the insanity defense may not be identical, a finding of GBMI essentially amounts to a conclusion that the jury believes some of the defendant's insanity defense, i.e., that he has some sort of mental defect, but not that his mental condition rendered him unable to appreciate the wrongfulness of his behavior or to conform his conduct to the requirements of law. All the special verdict does is to allow the jury to articulate this conclusion in a definite form. Weismiller can scarcely complain that the jury's refusal to treat his defense as an "all or nothing" proposition violated the Constitution.
 
 
 20
 Weismiller also devotes a considerable amount of space to detailing the collateral consequences which attend an adjudication of mental illness under Illinois law. See Petitioner's Br. at 20-21. However, as the state contends, the collateral consequences which attend a conviction of murder are at least as great. In addition, we find petitioner's argument regarding the social stigma attached to the finding to be highly speculative.[6]
 
 B.
 
 21
 We also reject Weismiller's contention that the Illinois statute bears no rational relationship to any legitimate state interest.[7] The respondents have identified at least three legitimate interests which are sufficient to sustain the statute: (1) identification of those persons in the corrections system in need of psychiatric treatment; (2) the just sentencing of mentally ill defendants; and (3) increased accuracy of jury verdicts in insanity cases. We find that the statute bears a sufficiently close relationship to each of the stated objectives to survive a "rational basis" equal protection challenge.
 
 
 22
 Weismiller attacks the first of the state's asserted justifications by contending that the statute does not require treatment for the mentally ill offender. This argument simply misses the point. The verdict allows the state to identify those convicted defendants who are likely to require treatment. Quite clearly, not all defendants who were mentally ill at the time of their offenses will remain so at the time of incarceration. Thus treatment may not be necessary, or even appropriate, in some cases. Still, it cannot be said that the state is not assisted in its obligation to provide treatment to those who need it by a statute which identifies a class which is most likely to need it. If Weismiller is, in fact, in need of treatment but is not receiving it, then his remedy is a suit to compel the state to provide treatment. See People v. McLeod, 407 Mich. 632, 288 N.W.2d 909 (1980); Stader v. State, 453 N.E.2d 1032, 1036 (Ind.App.1983). The state is not required to draw perfect classifications, merely reasonable ones.
 
 
 23
 Weismiller does not cite us to any authority forbidding the state to treat as relevant a jury finding that a criminal defendant was mentally ill. We note that even where a defendant has been found not guilty by reason of insanity, the state may commit him, without more, to an institution for confinement until he proves he is no longer dangerous. Jones v. United States, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). Jones provides a useful analogy insofar as it holds that a state may rationally take into account the defendant's mental state at the time of the crime charged in making non-punitive decisions about how to deal with him.[8] See id. at 363-64, 103 S.Ct. at 3049.
 
 
 24
 Secondly, the finding of guilty but mentally ill provides a sentencing guide to the trial judge. Petitioner contends that the fact that the court may impose any sentence on the mentally ill offender that it could on an offender who was not mentally ill at the time of his offense renders this justification illusory. However, the finding still provides a guide for the sentencing judge's discretion, even though it does not alter the statutory limits of sentence which may be imposed. Under Illinois law, a sentencing judge is directed to consider in mitigation "substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense." Ill.Rev.Stat. ch. 38, p 1005-5-3.1(4) (Smith-Hurd 1982).
 
 
 25
 Both the petitioner and the respondent seem to believe that this provision allows or requires a sentencing judge to take into account a defendant's mental illness at the time of the crime. See Petitioner's Br. at 17, Respondent's Br. at 8. Although we have been able to find no Illinois authority so holding, this belief seems correct. A defendant is "mentally ill" under Illinois law if he suffered from a "substantial disorder of thought, mood, or behavior ... at the time of the commission of the offense ... which impaired [his] judgment, but not to the extent that he [was legally insane]." Ill.Rev.Stat. ch. 38, p 6-2. Such a condition quite obviously, in the language of the statute, "tends to excuse" the defendant's conduct, although not establishing a complete defense.
 
 
 26
 Petitioner contends that a sentencing judge could apply the above mitigation analysis even in the absence of a finding by the jury that a defendant is mentally ill. Perhaps this is true, but that does not prevent the state from generally relying on a jury to decide the presence or absence of this mitigating factor.
 
 
 27
 Finally, as the state argues, the statute increases the chance that jury verdicts in insanity cases will be in accordance with the law that is supposed to govern such cases. Indeed, this is perhaps the primary motivating factor behind enactment of such statutes. See B. McGraw, D. Farthing-Capowich & I. Keilitz, The "Guilty But Mentally Ill" Plea and Verdict: Current State of the Knowledge, 30 Vill.L.Rev. 117, 124-25 (1985) (hereinafter cited as "McGraw"). Although not directly addressing this justification, the petitioner seems to suggest that this goal is somehow improper. See infra section C. We do not agree. The state has a legitimate interest in having juries decide cases according to the law. The legislature could well have believed that many defendants were being found not guilty by reason of insanity even though they did not satisfy the legal standard for the defense.
 
 
 28
 The difficulty is that lay juries are presented with complicated and to some extent conflicting notions of what renders a person "insane" in legal, psychiatric, and common sense terms. The GBMI statutes are designed to insure that the jury applies the legal definition of insanity, by underscoring that a person might be "mentally ill" in clinical terms, "crazy" in common sense terms, yet not legally insane. As the Michigan Supreme Court has noted, "It is well within the power of the Legislature to attempt to cure what it sees to be a misuse of the law." People v. Ramsey, 422 Mich. 500, 375 N.W.2d 297, 301 (1985).
 
 
 29
 We believe it is beyond question that the state could instruct a jury that it cannot acquit on the basis of insanity unless the legal test for insanity has been met. We see no additional objection which can be raised because the state chooses to formalize these instructions by providing a separate verdict form.
 
 C.
 
 30
 Weismiller's final challenge to the statute is that it creates an impermissible risk of jury compromise. This point is to some extent related to the last. As we have said, there is nothing impermissible about a statute which may result in the conviction of those who are not in fact legally insane. If this can be labeled a "compromise," it is a permissible one. However, we take him to also mean that the statute will result in convictions where the jury concludes that the defendant was in fact legally insane, but should be punished anyway. We reject this contention.
 
 
 31
 Defendant has pointed to no evidence which would support his contention that the availability of a GBMI verdict encourages the jury to reject bona fide insanity defenses, and we have been able to find none. In fact the empirical data which we have been able to locate casts doubt on any such effect. See McGraw, supra at 170-78 (summarizing data); Evaluating Michigan's Guilty But Mentally Ill Verdict: An Empirical Study, 16 Mich.J.L.Ref. 77, 100-01 (1982). In People v. Kinard, 129 Mich.App. 94, 341 N.W.2d 820, 823 (1983), the Court of Appeals of Michigan noted this problem and found it fatal to the defendant's due process attack on the GBMI statute. So do we.
 
 
 32
 Secondly, we believe that the risk of compromise is neither greater nor different in kind than that presented when a jury is instructed on lesser included offenses. We have found no case which discusses whether the giving of a lesser included offense instruction, where warranted by the evidence,[9] amounts to a violation of Due Process by creating an impermissible risk of jury compromise. There are, however, numerous cases which hold that such an instruction is no cause for objection by the defendant under Fed.R.Crim.P. 31(c). E.g., United States v. Bey, 667 F.2d 7, 11 (5th Cir.1982); United States v. Methvin, 441 F.2d 584 (5th Cir.), cert. denied 404 U.S. 839, 92 S.Ct. 130, 30 L.Ed.2d 72 (1971).
 
 
 33
 Similarly we do not believe that either those instructions, or the guilty but mentally ill verdict involved in this case constitute a violation of Due Process. In this regard, we agree with the reasoning of the Court of Appeals of Michigan rejecting a similar challenge:
 
 
 34
 By this reasoning [the suggestion that the GBMI verdict creates an impermissible risk of compromise], instructions on lesser included offenses would be impermissible as encouraging compromise between a finding of guilty on the crime charged and a finding of not guilty. Rather, such instructions, by disclosing the full spectrum of criminal responsibility, may afford the jurors a better understanding of the gradation of responsibility in the law of homicide and thereby help their assessment of the case.
 
 
 35
 People v. Bailey, 142 Mich.App. 571, 370 N.W.2d 628, 630 (1985).
 
 
 36
 Finally, we are bound by the Supreme Court's dismissal last term of Hardesty v. Michigan, --- U.S. ----, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986) for want of a substantial federal question. The Supreme Court has held that the lower courts are bound by its summary actions on the merits, although "[a]scertaining the reach and content of summary actions may itself present issues of real substance." Hicks v. Miranda, 422 U.S. 332, 345 n. 14, 95 S.Ct. 2281, 2290 n. 14, 45 L.Ed.2d 223 (1975). To give us additional guidance in resolving those issues, the Court has instructed us that "[s]ummary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction.... They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977); see also Savings and Profit Sharing Fund of Sears Employees v. Gago, 717 F.2d 1038, 1043 (7th Cir.1983).
 
 
 37
 A review of the jurisdictional statement in Hardesty reveals that the following question was presented to and found insubstantial by the Supreme Court:
 
 
 38
 Whether Michigan's statutes allowing a verdict of guilty but mentally ill unconstitutionally infringe on the rights to a fair jury trial and to present an insanity defense, where the trial judge instructed on the verdict over defense objection and the jury found Appellant Hardesty to be guilty but mentally ill on all seven counts.
 
 
 39
 Jur.Stmt. in No. 85-6850, Hardesty v. Michigan at 1.
 
 
 40
 While the statement of the issue is scarcely a model of clarity, it is further explicated in the body of the jurisdictional statement, where Hardesty claimed that "the objective in creating the GBMI legislation is to induce 'compromise' guilty verdicts that purportedly ensure both prolonged incarceration and treatment for the mentally ill offender.... [S]ome commentators have found that it violates due process, e.g., because it will deprive legally insane defendants 'of their colorable constitutional right to acquittal.' " Id. at 19 (quoting Grostic, The Constitutionality of Michigan's Guilty But Mentally Ill Verdict, 12 U.Mich.J.L.Ref. 188, 199 (1978)).
 
 
 41
 We believe that the "compromise verdict" issue was fairly before the Court, and was rejected by it. We have added our own comments above only to make clear that, in the event that we have overstated the precedental effect of Hardesty, we reject this challenge independently.
 
 IV.
 
 42
 For the reasons stated above, the decision of the district court denying the writ of habeas corpus is
 
 
 43
 AFFIRMED.
 
 
 
 [1]
 The challenged statutes provide:
 Sec. 6-2. Insanity. (a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law.
 * * *
 (c) A person who, at the time of the commission of a criminal offense, was not insane but was suffering from a mental illness, is not relieved of criminal responsibility for his conduct and may be found guilty but mentally ill.
 (d) For purposes of this Section, "mental illness" or "mentally ill" means a substantial disorder of thought, mood or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law.
 Ill.Rev.Stat. ch. 38, Sec. 6-2 (Smith-Hurd 1972 and Supp.1986)
 .... When the affirmative defense of insanity is presented during the trial, the court, where warranted by the evidence, shall also provide the jury with a special verdict form of guilty but mentally ill, as to each offense charged and shall separately instruct the jury that a special verdict of guilty but mentally ill may be returned instead of a general verdict, but that such special verdict requires a unanimous finding by the jury beyond a reasonable doubt that the defendant committed the acts charged and that the defendant was not legally insane at the time of the commission of those acts but that he was mentally ill at such time.
 Ill.Rev.Stat. ch. 38, Sec. 115-4(j) (Smith-Hurd Supp.1986).
 
 
 [2]
 It is not entirely clear from the Appellate Court's opinion that it was directly addressing the merits of Weismiller's challenges to the instructions. The court's discussion of the challenges "on the merits" may have been for the purpose of deciding whether the alleged error was "fundamental," thus coming within an exception, under Illinois law, to the contemporaneous objection rule
 
 
 [3]
 We do not mean to suggest that petitioner's brief made no reasonable argument on the "cause" question. At the time his case was argued, Carrier had not yet been decided by the Supreme Court and there was considerable debate whether attorney inadvertence or mistake which was not so deficient as to make out a separate constitutional violation was nonetheless sufficient "cause" to excuse a state procedural default under Sykes. See Clay v. Director, Juvenile Division, Department of Corrections, 749 F.2d 427, 433 n. 3 (7th Cir.1984) (collecting cases). Thus counsel's decision to pursue the issue that the district court selected the wrong legal standard, rather than the less reviewable issue that the facts made out a violation of even the more stringent standard seems to have been, in light of the then prevailing law, perfectly reasonable. This does not, of course, excuse the waiver of the latter argument
 
 
 [4]
 In fact, our research has disclosed no case which has held a GBMI statute unconstitutional
 
 
 [5]
 Under the Illinois view of the insanity defense as expressed in the state court's opinion in this case, the jury must have been affirmatively persuaded that the defendant was sane. Such a state law requirement does not alter the federal constitutional analysis
 
 
 [6]
 In view of our disposition of petitioner's claim that the Illinois statutes place a "burden" on his "right" to an insanity defense, we need not decide whether the insanity defense is in fact constitutionally required. Compare Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (state may require defendant to prove insanity beyond a reasonable doubt) with Ford v. Wainright, --- U.S. ----, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (execution of the insane violates Eighth Amendment); see also Sinclair v. State, 161 Miss. 142, 132 So. 581 (1931) (abolition of insanity defense violated state and federal due process guarantees); State v. Strasburg, 60 Wash. 106, 110 P. 1020 (1910) (same)
 
 
 [7]
 Petitioner does not argue that a higher level of scrutiny should apply, nor would we accept such an argument in light of our earlier conclusion that his right to present an insanity defense is not burdened by the adjudication of "guilty but mentally ill" and in light of the fact that mental illness is not a suspect class. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)
 
 
 [8]
 We do not mean to suggest that the state may punish a defendant for his mental illness at the time of the crime. Cf. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 752 (1962) (state may not punish drug addicts for their status as addicts)
 
 
 [9]
 We note that the Illinois statute provides that the instruction can only be given where the evidence warrants it. Ill.Rev.Stat. ch. 38, p 115-4(j) (Smith-Hurd Supp.1986)