Leon **HAVRILENKO**, Petitioner,

v.

**Jack R. DUCKWORTH, Warden; Indiana Attorney General,** Respondents.

No. S 86–700.

United States District Court, N.D. Indiana, South Bend Division.

May 29, 1987.

Sabra A. Weliever, Deputy Atty. Gen., Indianapolis, Ind., for respondents.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

Petitioner, Leon Havrilenko, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated at the Indiana State Prison in Michigan City, Indiana. Respondents filed their Return to Order to Show Cause on March 9, 1987, and complied with the dictates of *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). Petitioner filed his traverse with this court on March 23, 1987. The petitioner exhausted his available state remedies when his belated motion to correct errors was denied by the Supreme Court of Indiana. See *Havrilenko v. State of Indiana,* 500 N.E.2d 750 (Ind.1986). The state court record has been filed and examined here under the mandates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). This cause is now ripe for adjudication.

Petitioner presents two issues for review:

> Ground One: Denial of Amendment ONE (Right of Petition) to the U.S. Constitution; to seek redress of violation of constitutional rights in a state criminal proceeding. Amendment FOURTEEN to the U.S. Constitution.

> Ground Two: Under circumstances of petitioner's case; denial of assistance of counsel at time of sentencing of forty (40) years before the state Trial Court.

The petitioner discusses the supporting facts on pages 5A–5C of his habeas petition. Petitioner basically asserts that he was denied assistance of counsel at his sentencing and that a third psychiatrist should have examined him prior to trial, in addition to the two psychiatrists who did examine him, in order to determine the issue of his sanity.

Petitioner was convicted on April 16, 1981, for the offense of murder in the

Leon Havrilenko, pro se.

Elkhart Superior Court. Petitioner appeared before the court on May 14, 1981, with his court-appointed counsel, Joanne Graham, for sentencing. At that time, the petitioner informed the court that he did not wish to be represented any longer by the court-appointed counsel. He further informed the court that he had refused to discuss the presentence report with his court-appointed counsel. The presentence report was then read to petitioner by the Elkhart County Sheriff's Department. The petitioner requested new counsel and the court continued the sentencing until May 28, 1981.

On May 22, 1981, Joanne Graham, the court-appointed counsel from the Public Defender's Office, was granted leave to withdraw her appearance as counsel for the petitioner. R.W. Mehl and R.L. Mehl of Mehl, Mehl, Beeson and Leatherman filed their appearance as co-counsel for the petitioner. Mehl and Mehl were retained by the petitioner. The trial court then granted the new counsel's motion to continue the sentencing to June 4, 1981.

At the sentencing on June 4, 1981, the petitioner informed the court that he did not want to be represented by the newly retained counsel, but instead wished to represent himself. The court then discharged the Mehls as counsel:

Q I understand betweeen (sic) the time of your conviction and today's date that you had at least made arrangements for Mr. Mehl to be your attorney and he has, in fact, appeared for you; is that correct?

A Not quite.

Q Well, the record shows he has appeared as your lawyer; is that correct?

A Do you want me to explain?

Q Just answer my questions first. Did you retain Mr. Mehl as your lawyer?

A (Defendant shakes head negatively)

Q Who did retain him?

A I asked Mr. Mehl for help.

Q Okay, and Mr. Mehl offered to help you?

A Yes.

Q And his son and Mr. Brennen also agreed to serve as counsel, correct?

A Yes; to help.

Q I understand today you desire to not be represented by Mr. Brennen? You fired him"

A Mr. Brennen don't say much. I didn't fire him.

Q You do want Mr. Brennen as your attorney?

A No. I don't want neither of them. I don't want Mr. Mehl to start with. Then I ask him to be my attorney; Mr. Brennen and he said no, if they're not in, I don't want to be your attorney either.

Q Who do you want as your attorney?

A I don't want any.

Q You did, in fact, pay money to Mr. Mehl's office to represent you, correct?

A Yes.

Q And they did prepare for sentencing; is that correct?

A What?

Q They prepared to be here today; correct?

A I don't ask them to be here today.

Q You don't want Mr. Mehl to represent you today?

A No.

Q Are you prepared to represent yourself in sentencing then?

A Yes.

THE COURT: First of all, Mr. Mehl, you were, in fact, retained privately?

MR. MEHL: Yes, Your Honor.

THE COURT: And you were paid a fee?

MR. MEHL: Yes, Your Honor.

THE COURT: And that fee, I assume, was in contemplation not only of sentencing but of contemplating an appeal?

MR. MEHL: That's correct, sir.

THE COURT: And do I understand that the fee that was, in fact, paid was sufficient to have perfected an appeal or at least a substantial portion of the costs of the appeal?

MR. MEHL: We made an agreement with him and would have taken care of the appeal through the Supreme Court,

all costs included; attorney's fees for the Brennen office and the Mehl office in Goshen.

THE COURT: State versus Havrilenko. Cause coming on for sentencing. The Sheriff now produces the defendant in open court. Present, Richard W. Mehl and R.L. Mehl as counsel for the defendant; Max Walker, Deputy Prosecuting Attorney. The defendant now, in person, informs the Court that he does not desire to be represented by counsel and that he now desired to represent himself. Counsel for the defendant further represents to the Court that they had, in fact, entered into an agreement to appear for the defendant for sentencing and for purposes of perfecting an appeal and that the defendant had, in fact, paid sufficient sums of money within which to complete all sentencing procedures and all appeal procedure to the Indiana Supreme Court and the defendant having now discharged his counsel and having indicated that he now desires to represent himself, the Court now grants the request and now discharges Richard W. Mehl and R.L. Mehl as counsel for the defendant and now further finds that the defendant is, in fact, not an indigent person and therefore, not entitled to the appointment of counsel either for purposes of sentencing or for the purposes of perfecting an appeal.

See Tr. Transcript, pp. 565–568. It is evident from this colloquy that petitioner wished to represent himself.

The state trial court then sentenced petitioner and informed him of his right to appeal and the procedures involved therein:

BY THE COURT:

Q Okay, Mr. Havrilenko, having been found guilty, and the Court having sentenced you to 40 years, I now must inform you that you have the right to take an appeal from this conviction, if you desire to do so. I would further indicate to you that it's necessary that you file a motion to correct errors within 60 days from this date. The motion to correct errors sets forth what mistakes or errors at law you believe were committed or anything that you believe was not proper that occurred during the time of the trial. You must set those things forth in a motion to correct errors. That must be on file within 60 days from this date. Thereafter, the Court will conduct a hearing and make a ruling on the motion to correct errors. If that ruling is overruled, then you will have 30 days from that date in which to file a request for a praecipe with the Clerk directing exactly what part of the record you wish prepared to use for an appeal. Okay, also do you understand that for purposes of preparing an appeal, you are entitled to be represented by an attorney. If you do have any money, you are entitled to be represented by a lawyer without cost to you. The Court has already held a hearing today and it's already determined that you had, in fact, made sufficient arrangements with Mr. Mehl to represent you during the sentencing and in fact, paid him enough money to perfect an appeal. That indicates to me that you are not an indigent person. You are not a pauper. You are not a poor person. This Court is under no obligation to appoint a public defender or any other lawyer paid for by state funds for purposes of your appeal. If you wish to appeal this case, you may do so, but you have to hire and pay for your own lawyer. Do you know, at this time, whether or not you wish to appeal?

A I (sic) think about it.

Q Do you understand what I said about the lawyer?

A (Witness nods head affirmatively)

Q You are not sure, at this time, whether you do or you don't?

A Oh, I'm pretty sure, if you say so.

Q Do you remember the crucial time limit? If you desire to appeal, you must present and file with this Court a motion to correct errors setting forth all the things that you consider to be

mistakes within 60 days from this date. Do you understand that?

A Yeah.

THE COURT: The Court now informs the defendant that he has the right to an appeal and that if he desires to perfect an appeal, he must file a written motion to correct errors within 60 days from this date and that following ruling on said motion will have 30 days within which to file a praecipe directing the Clerk to prepare the record necessary for appeal. The Court now inquires of the defendant whether he desires to perfect an appeal, and the defendant responds that he will think about it. The Court further informs the defendant of his right to counsel and further readvises the defendant that because he has made arrangements to hire private counsel for purposes of appearing for sentencing this date and that he had, in fact, paid sufficient monies to perfect an appeal, the Court now finds that the defendant is not an indigent person and is not entitled to pauper counsel and that any appeal transcript as well as attorney fees must be paid for by the defendant out of his own funds absent any further showing of indigency. The Court having so advised the defendant of these rights, now orders the defendant remanded to the custody of the Sheriff and the Sheriff is directed to carry out the judgment of the Court and to convey the defendant to the Department of Corrections.

THE DEFENDANT: Thank you very much, Your Honor.

Tr. Transcript, pp. 579–581. It is evident from this colloquy that the petitioner had been adequately informed of his right to appeal, that the petitioner had a right to counsel on appeal, and that the petitioner understood the state trial court's admonishment.

Petitioner arrived at the state prison on June 29, 1981, and did not file a motion to correct errors pursuant to Trial Rule 59 of the Indiana Rules of Trial Procedure. Petitioner did file a petition for leave to file a belated motion to correct errors on August 18, 1983, more than two years after his sentencing date. See Rule P.C. 2 of Indiana Rules of Procedure for Post-Conviction Remedies. The trial court denied the belated motion on October 17, 1984, and the Supreme Court of Indiana affirmed. See *Havrilenko v. State of Indiana*, 500 N.E.2d 750 (Ind.1986). The Supreme Court of Indiana made the following finding:

Although both attorneys appeared at the hearing and demonstrated their willingness to continue to represent appellant, including an appeal in his behalf, appellant emphatically stated that he did not wish their services and that he wished to represent himself. The record reveals the trial court was exceedingly patient with appellant and very carefully advised him of the rules regulating the filing of a motion to correct error, the filing of his praecipe for transcript and the filing of his appeal in the Supreme Court, to which advice appellant replied that he would "think about it."

Appellant arrived at the State Prison on June 29, 1981. Following his arrival he made several trips to the writ room at the prison and on occasion contacted his former counsel whom he had employed and then discharged. Over a period of time, he contacted the trial judge and the clerk of the Elkhart Superior Court. He also contacted five different attorneys concerning the possibility of their representing him. This record clearly demonstrates that appellant was patiently and fairly treated by the trial court and that various counsel exerted their best efforts in attempting to properly represent him.

In a petition for leave to file a belated motion to correct error, there is a burden of proof to establish that a defendant's failure to timely file his motion is not his fault and to demonstrate that he has been diligent in seeking relief under the rule. *Bailey v. State* (1982), Ind., 440 N.E.2d 1130; *Jones v. State* (1979), 270 Ind. 556, 387 N.E.2d 1313. We must decide each of these cases on a case by case basis, depending upon their individual factual situation. *Dobeski v. State* (1981), 275 Ind. 662, 419 N.E.2d 753.

In the case at bar appellant has wholly failed in his proof. On the one hand appellant has consistently claimed he was seeking relief from his conviction, while on the other hand he has steadfastly rebuffed the attempts of the trial court to aid him when he was proceeding *pro se*. He rejected the attempts of both court-appointed counsel and privately employed counsel when each of them sought to aid him in his dilemma. There comes a time when the judiciary must say no to the type of conduct exhibited by appellant.

The trial court is affirmed.

*Havrilenko*, 500 N.E.2d at 751.

## II.

■ This court must determine whether the petitioner has procedurally defaulted. Procedural default occurs where the petitioner has not complied with reasonable state procedures, and the state's highest court has not been given the opportunity to resolve the merits of the petitioner's constitutional claim. *Jackson v. Cupp*, 693 F.2d 867, 869 (9th Cir.1982). In other words, if the petitioner fails to appeal an issue from a trial or a post-conviction relief petition within the time period set forth by the state procedural guidelines, review of that issue may be forever barred in the federal courts.

The Supreme Court of the United States has approached the topic of procedural default from two different angles. First, in *Fay v. Noia*, 372 U.S. 391, 398–399, 83 S.Ct. 822, 826–827, 9 L.Ed.2d 837 (1963), the Court held that federal courts have power under the federal habeas statute to grant relief despite the applicant's failure to have pursued a state remedy not available to him at the time he applies for federal relief. After Noia had been denied state post-conviction relief, he allowed the time for a direct appeal to lapse without seeking review by a state appellate court. *Fay v. Noia*, 372 U.S. at 394, 83 S.Ct. at 825. The issue on which Noia had defaulted was whether his confession had been coerced thus allowing his conviction to be procured in violation of the Fourteenth Amendment. According to the Court, Noia had the choice whether to sit content with life imprisonment or to formulate an appeal which, if successful, might have led to a retrial and possible death sentence. 372 U.S. at 440, 83 S.Ct. at 849. Thus the Court held that Noia's failure to appeal here was not an intelligent and understanding waiver of his right to appeal such as to justify the withholding of federal habeas corpus relief. 372 U.S. at 399, 83 S.Ct. at 827. However, an exception was delineated where a prisoner deliberately bypasses the orderly procedure of the state courts. In this situation, the federal court may deny relief.

The deliberate bypass standard enunciated in *Fay v. Noia* was rejected nearly fourteen years later in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In the majority opinion, Justice Rhenquist implemented the cause and prejudice standard in which a petitioner must show cause for the bypass and actual prejudice arising from the default. 433 U.S. at 87, 97 S.Ct. at 2506. Sykes was arrested and police read him his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Sykes declined the opportunity to seek counsel, indicated a desire to talk, and proceeded to make a statement which was admitted into evidence at the trial. Counsel for Sykes did not challenge the admissibility of any of his statements on the ground that Sykes had not understood the *Miranda* warnings. Sykes then appealed his conviction, but apparently did not challenge the admissibility of the inculpatory statements. Subsequently, Sykes filed a petition for a writ of habeas corpus asserting the inadmissibility of his statements by reason of his lack of understanding of the *Miranda* warnings. The Court held that where a prisoner asserts for the first time in federal court a claim which was not properly raised in a state court, that prisoner must show cause for not complying with state procedural rules, and prove the actual prejudice which resulted from that noncompliance. The Court, however, did not explicitly overrule *Fay v. Noia, supra*, but

did reject its sweeping language. 433 U.S. at 87–88, 97 S.Ct. at 2506–2507.

Two 1986 Supreme Court cases have helped to define the definition of the "cause and prejudice" standard set forth in *Wainwright v. Sykes, supra.* In *Murray v. Carrier,* —— U.S. ——, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Court held that a federal habeas petitioner cannot show cause for a procedural default by establishing that a competent defense counsel's failure to raise a substantive claim of error was inadvertent rather than deliberate. The Court further held that so long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), there is no inequity in requiring defendant to bear the risk of attorney error that results in a procedural default. 106 S.Ct. at 2645–2646. Existence of a cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Id.* The Court did note, however, that where a constitutional violation has resulted in the conviction and subsequent incarceration of one who is actually innocent, the federal court may grant the writ even in the absence of a showing of cause for the procedural default. 106 S.Ct. at 2650. Carrier did not allege that any external impediment prevented his counsel from complying with the state's procedural rule. Carrier also did not claim that his counsel's performance on appeal was so deficient as to be ineffective assistance of counsel. Neither did Carrier present any evidence which would exonerate him from the crime of which he was convicted. Thus, the Court denied Carrier's request for federal habeas relief.

In a second case, *Smith v. Murray,* —— U.S. ——, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), the Court dismissed Smith's habeas because he defaulted his underlying constitutional claim by failing to press it before the Supreme Court of Virginia on direct appeal. The Court further held that a deliberate, tactical decision not to pursue a particular constitutional claim on direct appeal does not excuse a defendant's failure to adhere to a state's adequate procedural rule so as to permit review of that claim in federal habeas proceedings. 106 S.Ct. at 2666. Smith claimed that the constitutional error occurred when the prosecutor elicited testimony from a psychiatrist concerning the content of an interview with Smith which was conducted to explore the possibility of presenting psychiatric defenses at trial. The Court, citing *Murray v. Carrier, supra,* held that the decision of Smith's counsel not to pursue this claim on direct appeal did not constitute cause for procedural default because of "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it,...." *Smith v. Murray,* 106 S.Ct. 2667, citing *Murray v. Carrier,* 106 S.Ct. at 2641. Furthermore, the Court held that the application of the cause and prejudice test would not result in a "fundamental miscarriage of justice" in Smith's instance since there was no allegation that the testimony derived from the psychiatrist at trial was false or in any way misleading. 106 S.Ct. at 2668; *see also Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982). In sum, the holding of the Court was that:

> When the alleged error is unrelated to innocence, and when the defendant was represented by competent counsel, had a full and fair opportunity to press his claim in the state system, and yet failed to do so in violation of a legitimate rule of procedure, that burden has been carried.

106 S.Ct. at 2669.

The holdings of *Murray v. Carrier, supra,* and *Smith v. Murray, supra,* seem to indicate that the Court is adhering strictly to the cause and prejudice standard first enunciated in *Wainwright v. Sykes, supra.* The Court in *Smith v. Murray* even went as far as to reject the suggestion that the principles of *Wainwright v. Sykes* apply differently depending on the nature of the penalty a state imposes for the violation of its criminal laws. 106 S.Ct. at 2668.

### III.

Thus, according to *Wainwright v. Sykes, supra,* and its progeny, the petitioner, Havrilenko, must first show cause as to why he defaulted. See *United States ex rel. Weismiller v. Lane,* 815 F.2d 1106 (7th Cir. 1987); and *United States ex rel. Villa v. Fairman,* 810 F.2d 715 (7th Cir.1987). Then, if petitioner can establish cause, the petitioner must show a prejudice which resulted therefrom.

In the petitioner's case here, petitioner argues that he was denied effective assistance of counsel at his sentencing. Again, petitioner failed to press this claim in a timely manner. This court is inclined to deny petitioner's relief for this Sixth Amendment claim on the basis of procedural default pursuant to *Wainwright v. Sykes, supra,* and its progeny in this circuit.

However, before this court bottoms its decision on procedural default, it must determine whether petitioner was indeed denied assistance of counsel in violation of the Sixth Amendment at the time of sentencing. At the sentencing hearing, petitioner informed the court that he no longer wished to be represented by counsel, and requested that he be allowed to proceed *pro se.* See Tr. Transcript, pp. 565–568, *supra.* The landmark decision in the area of *pro se* defendants is *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Court in that case held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. *Id.* at 807, 95 S.Ct. at 2527. See *Johnson v. Duckworth, et al.,* 793 F.2d 898, 900 (7th Cir.1986). The right of self-representation stems from the Sixth Amendment of the Constitution. In short, the Sixth Amendment constitutionalizes the right in an adversary criminal trial to make a defense as we know it. *Id.* 422 U.S. at 818, 95 S.Ct. at 2532. The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his own defense. *Id.* at 819, 95

S.Ct. at 2533. This right is codified in 28 U.S.C. § 1654 which states:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

Thus, the Sixth Amendment allows a defendant to represent himself in a criminal trial.

It must be noted that before a defendant will be allowed to represent himself, he must be afforded the opportunity to choose an attorney to represent him, or if he cannot afford an attorney, to have one appointed for him. This safeguard is to assure the defendant of a fair trial. However, the defendant must be free personally to decide whether the use of counsel is to his advantage. The right to defend is personal. *Id.* at 834, 95 S.Ct. at 2540. Therefore, when a defendant chooses to represent himself, he must "knowingly and intelligently" forego those relinquished benefits associated with the right to counsel. *Id.* at 835, 95 S.Ct. at 2541; *United States v. Mitchell,* 788 F.2d 1232, 1235 (7th Cir.1986); *United States v. Martin-Trigona,* 684 F.2d 485, 491 (7th Cir.1982); *United States v. Trapnell,* 638 F.2d 1016, 1029 (7th Cir. 1980). The defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Faretta, supra,* citing *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942). Thus, before a defendant proceeds *pro se,* the court must ascertain: (1) that the defendant voluntarily, knowingly, and intelligently waived his right to counsel; (2) that he understood the charges against him and the magnitude of the potential penalty; and, (3) that he understood that he would be expected to handle his defense in accordance with the normal rules of evidence and procedure. *United States ex rel. George v. Lane,* 718 F.2d 226 (7th Cir.1983). See also *Faretta,* 422 U.S. at 835–836, 95 S.Ct. at 2541.

It is axiomatic that a defendant may represent himself in a criminal proceeding.

*Faretta, supra.* One corresponding obligation of a *pro se* litigant is to abide by the court's unfavorable rulings while preserving any right to appeal. *United States v. Brown,* 791 F.2d 577 (7th Cir.1986), citing *Maness v. Myers,* 419 U.S. 449, 458–460, 95 S.Ct. 584, 590–592, 42 L.Ed.2d 574 (1975). A defendant is bound by his actions and the rulings by the court:

> The right of self representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel."

*Faretta,* 442 U.S. at 834, n. 46, 95 S.Ct. at 2541 n. 46. Once it is determined by the exhaustion of pretrial procedural safeguards that a defendant may proceed *pro se,* he is personally responsible for his conduct in the courtroom.

█ It cannot be argued here that petitioner was denied effective assistance of counsel. At a previously scheduled sentencing hearing on May 14, 1981, petitioner informed the court that he did not wish to be represented by the court-appointed attorney who had defended him at the jury trial. The state trial court then allowed petitioner to retain new counsel for the June 4, 1981, sentencing. At that sentencing, the petitioner informed the court that he wished to terminate his newly retained counsel and proceed *pro se.* Pursuant to *Faretta v. California, supra,* and its progeny, the state trial court had the obligation to ascertain that the petitioner, then defendant: (1) voluntarily, knowingly and intelligently waived his right to counsel; (2) understood the charges against him and the magnitude of the potential penalty; and (3) understood that he would be expected to handle his defense in accordance with the rules of evidence and procedure.

At the sentencing on June 4, 1981, the state trial court and petitioner engaged in a colloquy in which petitioner stated that he wanted to proceed *pro se.* See Tr. Transcript, pp. 565–568, *supra.* This court determines from such colloquy that petitioner voluntarily, knowingly and intelligently waived his right to counsel. It is also evident from the colloquy between the trial court and the petitioner at the sentencing that petitioner understood the nature of the charges against him. It was also established at the sentencing that the presentence report had been read to the petitioner. See Tr. Transcript, p. 571. Thus, petitioner was aware of the potential penalty he might receive for his conviction. The procedural format of the sentencing was ·very basic. Petitioner was given adequate opportunity in which to argue his case. This court finds that petitioner was provided adequate representation at the jury trial, and that petitioner was properly allowed to proceed *pro se* at his sentencing. Under *Faretta v. California, supra,* petitioner's Sixth Amendment right to proceed *pro se* was properly safeguarded.

█ Furthermore, once the state trial court had determined petitioner's sentence, the trial court advised petitioner of his right to appeal and all the steps and procedures necessary for an appeal. The trial court also informed the petitioner that he would be entitled to be represented by an attorney on appeal. Since petitioner was not a pauper, the trial court informed petitioner that he must retain counsel for an appeal. See Tr. Transcript, pp. 579–581. However, even after such an admonishment from the state trial court, the petitioner still failed to effect an appeal in a timely manner. Petitioner was acting as his own counsel by choice and cannot claim now that he was denied assistance of counsel by the state officials or anyone else. Petitioner had paid the lawyers whom he discharged at the sentencing to represent him through the appeal stages to the Supreme Court of Indiana. Petitioner's own voluntary actions delivered him into this procedural dilemma. A defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a "denial of effective assistance of counsel." *Faretta v. California,* 422 U.S. at 834, n. 46, 95 S.Ct. at 2541, n. 46. Petitioner has failed to establish a cause for his procedural default pursuant to *Wainwright v. Sykes, supra.*

## IV.

■ Petitioner also asserts that his constitutional rights were violated when the state trial court failed to appoint a third psychiatrist to determine his sanity. According to petitioner, the two court-appointed psychiatrists reached different conclusions in regard to his insanity claim, and a third psychiatrist should have been appointed to render a third conclusion in order to "break the tie." This is not required by the Constitution of the United States or under Indiana law. The jury in petitioner's trial had an opportunity to see and hear both of the court-appointed psychiatrists testify at the trial. It was the jury's task to determine which psychiatrists' testimony was more credible. If the jury assigned more credibility to the testimony of the psychiatrist who testified that the petitioner was not insane at the time of the murder, this court will not disturb the jury's finding. In any event, petitioner also failed to raise this claim in a timely manner.

Accordingly, petitioner's petition for a writ of habeas corpus is hereby DENIED on the basis of procedural default.

SO ORDERED.