838 F.2d 1215
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry R. PINKERMAN, Petitioner-Appellant,
v.
Richard A. MORRIS, Respondent-Appellee.
 No. 86-3705.
 United States Court of Appeals, Sixth Circuit.
 Feb. 11, 1988.
 
 Before ENGEL and RYAN, Circuit Judges and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 The plaintiff-appellant, Larry Pinkerman, appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. Pinkerman aserts that the district court should have granted his petition based on either the state trial court's failure to provide him with requested portions of the transcript from his second trial[1] or the trial court's admission of a statement which had been suppressed pursuant to an earlier motion. Additionally, Pinkerman alleges that he was denied effective assistance of counsel because his habeas counsel was incompetent. For the reasons stated herein, we affirm the district court's denial of Pinkerman's petition. Additionally, we find it unnecessary to address Pinkerman's ineffective assistance of counsel claim in light of our disposition of his denial of transcript claim.
 
 I.
 
 2
 Pinkerman was convicted pursuant to Ohio law for the aggravated murder of Bobby Lee Galloway. There was strong circumstantial evidence tying Pinkerman to the murder, although he has maintained his innocence throughout the proceedings. There was testimony that Pinkerman had been drinking with the victim in various area bars since early morning on the day Galloway was murdered. Additionally, witnesses testified that Galloway was carrying several hundred dollars and that Pinkerman had stated that Galloway was not going to get away from Pinkerman with the money.
 
 
 3
 Galloway's body was found by people who contacted the police at 1:20 p.m. near Crabtree Hollow. He had been seen alive at a bar with Pinkerman at 11:00 a.m. that day. Also, Edgar Sanders testified that he saw Galloway with another man in a black station wagon, the type of car Pinkerman owned, at Crabtree Hollow between 11:20 a.m. and 11:45 a.m. that day. Sanders could not identify the other man as Pinkerman or identify the car as Pinkerman's. However, one witness testified that Sanders had told him that Sanders himself had committed the murder.
 
 
 4
 Galloway's death was the result of numerous puncture wounds. A criminologist testified that spots on the jeans Pinkerman was wearing when he was arrested later that night were human blood type "A", RH positive, with subfactors CEce, the same type as Galloway's. This type of blood is found in 5.2% of the population. Pinkerman's blood was tested and found to be of a different type. Additionally, the criminologist testified that blood found on a screwdriver taken from Pinkerman's car, which had been used by the pathologist to probe the wounds prior to analysis, and found on Pinkerman's shirt, was human, but could not be typed because there was an insufficient amount.
 
 
 5
 Dr. Hunter, a pathologist who conducted the autopsy, testified regarding the nature of the several puncture wounds. At the third trial, the pathologist testified that he actually probed some of the wounds with the screwdriver found in Pinkerman's car and opined that an instrument "identical" to it was used.
 
 II.
 
 6
 After the second trial ended in a mistrial, Pinkerman, who was at that point acting pro se, requested to be provided with a transcript of the entire trial at the state's expense. Pinkerman described his reasons for requesting the transcript as follows: "There was inconsistencies, but the inconsistencies was mainly in the testimony of Edgar Sanders, and there was a few variations in Dr. Hunter's (the pathologist) from the time of the preliminary hearing in this case." The opposing counsel objected to the state providing Pinkerman with the entire transcript because of the time that that would take. However, the opposing counsel stated that it would be possible to transcribe Sanders' and Hunter's testimony. The trial judge stated that: "In the absence of any showing of any alleged inconsistency, any reason, why I would overrule concerning Dr. Hunter, but the evidence in this case indicates that it would probably be reasonable to transcribe the testimony of Mr. Sanders...." The trial court refused to provide Pinkerman with the entire transcript but he was provided with the portion covering Mr. Sanders' testimony. Additionally, he had already been provided with transcripts of the preliminary hearing and the first trial.
 
 
 7
 The Equal Protection Clause of the fourteenth amendment requires that an indigent defendant in a criminal case be provided with "a transcript of a prior proceeding when that transcript is needed for an effective defense or appeal." Britt v. North Carolina, 404 U.S. 226, 227 (1971). The Court considered two factors in determining the defendant's "need" for the transcript:
 
 
 8
 (1) The value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and
 
 
 9
 (2) The availability of alternative devices that would fulfill the same function as the transcript.
 
 
 10
 Id. (footnote omitted).
 
 
 11
 The value of the transcript is simply not at issue here. In Britt, the Court stated:
 
 
 12
 Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case.
 
 
 13
 Id. at 228.
 
 
 14
 However, Britt also requires this court to look at the availability of adequate alternatives to a transcript. The Court stated that a defendant seeking a free transcript does not bear the burden of proving inadequate the alternatives suggested by the state--in this case the preliminary hearing transcript, the first trial transcript, and the transcript of Sanders' testimony of the second trial. Id. at 230. Because we find that the inconsistencies Pinkerman wished to use as an impeachment tool and as statements against interest were in the portions of the transcripts provided, we find that Pinkerman had available alternatives "substantially equivalent" to the portions of the third trial transcript not provided. Id. Therefore, we affirm the district court's denial of habeas relief on this ground.
 
 III.
 
 15
 Pinkerman also asserts that habeas relief should have been granted because a statement had been suppressed at the defendant's first trial was admitted into evidence in the third trial. Shortly after his arrest, Pinkerman signed a waiver of his constitutional rights and answered some of the police's questions. In response to one officer's statement that they could place Pinkerman with Galloway in the Clover Leaf Bar, the Old River Cafe, and in Crabtree Hollow, the officer testified that Pinkerman stated: "If you know that much, you know the rest; get me a lawyer." Pinkerman's motion to suppress this statement had been granted prior to the first trial. However, at the third trial, the statement was introduced. Pinkerman, acting as his own attorney, failed to object to the statement and in fact questioned the witness with respect to it. When this issue was raised on appeal, the state court of appeals stated that it would not address the issue since Pinkerman had failed to make a contemporaneous objection in the trial court. Thereafter, the Ohio Supreme Court denied leave to appeal.
 
 
 16
 The Supreme Court has held that "a state prisoner barred by procedural default from raising a constitutional claim on direct appeal, could not litigate that claim in a Sec. 2254 habeas corpus proceeding without showing cause for and actual prejudice from the default." Engle v. Isaac, 456 U.S. 107, 110 (1982) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)). The Ohio courts' refusal to hear Pinkerman's suppression of evidence claim on direct appeal due to procedural default precludes habeas review of that claim absent a showing of cause and prejudice. Because Pinkerman has failed to establish "cause and prejudice," we affirm the district court's denial of his petition for habeas relief on this ground also.
 
 
 17
 Therefore, we AFFIRM the district court's denial of the petition for a writ of habeas corpus on all grounds asserted.
 
 
 
 [1]
 Pinkerman was convicted under Ohio law of aggravated murder in his third trial. He was found guilty in his first trial held in November of 1978, but that conviction was reversed by the Ohio Court of Appeals. A second trial held in July of 1981 resulted in a hung jury and a mistrial